AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A black Apple iPhone with a clear case, currently located<br>at the FBI Field Office in Albuquerque, New Mexico | )<br>)<br>)<br>)   Case No.    MR 26-1051<br>)<br>)<br>) |

**FILED**
United States District Court
Albuquerque, New Mexico

Erik Paltrow
Clerk of Court

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated by reference.

located in the _____ District of _____New Mexico_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2422(b) | Coercion and Enticement of a Minor |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Stacey Stout, FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__electronically signed and telephonically sworn__    *(specify reliable electronic means)*.

Date:    5/21/2026
_____

_____
*Judge's signature*

City and state:   Albuquerque, New Mexico

Jennifer Rozzoni, U.S. Magistrate Judge
_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN APPLE IPHONE, BLACK IN COLOR WITH A CLEAR CASE, CURRENTLY LOCATED AT THE ALBUQUERQUE FBI FIELD OFFICE, MORE FULLY DESCRIBED IN ATTACHMENT A. | Case No. _____<br><br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**.

I, Stacey Stout, a Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice, since September of 2019. As such, I am a federal law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and to make arrests for federal offenses including those enumerated in 18 U.S.C. § 2422. I am currently assigned to the FBI's Child Exploitation and Human Trafficking Task Force in Albuquerque, NM, where my responsibilities include investigating violations including violent crimes against children, human trafficking, child pornography, online

enticement, and sexual exploitation of children. I have received training on how to conduct complex investigations, and I have participated in the execution of arrest and search warrants involving various federal violations. My investigative training and experience includes, but is not limited to: conducting surveillance; interviewing subjects, targets and witnesses; writing affidavits for and executing search and arrest warrants; managing cooperating witnesses/defendants; issuing subpoenas; collecting evidence; and analyzing public records. I have previously participated in child exploitation investigations and the execution of related search warrants. I have also received training and have experience in obtaining, receiving, and reviewing electronic records, including prospective cell-site location for cellular telephones, obtaining forensic extractions of cellular telephones, and reviewing data obtained from cellular telephones and social media platforms/messaging applications. I have previously participated in child exploitation investigations and search warrants.

3.      The following information contained in this affidavit is based on my training and experience, my personal participation in this investigation, and information provided to me by other law enforcement officials. Unless otherwise indicated, where I have referred to written or oral statements, I have summarized them in substance and in part, rather than verbatim. Not all of the facts of the investigation known to me are contained herein, only those necessary to establish probable cause to search the below-listed items pertaining to the captioned investigation. As will be shown below, there is probable cause to believe that evidence of violations of 18 U.S.C. § 2422(b) (attempted coercion and enticement) will be found on the device listed below and described in Attachment A.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

4.    The property to be searched is an Apple iPhone, black in color with a clear case (hereinafter "the Device"). The Device is currently located at the Albuquerque Federal Bureau of Investigation, 4200 Luecking Park Avenue NE, Albuquerque, New Mexico 87107.

5.    The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

**LEGAL DEFINITIONS**

6.    The following terms are relevant to this affidavit in support of this application for a search warrant:

a.    *Child Pornography*: The term "child pornography" is defined at 18 U.S.C. § 2256(8) and is used interchangeably with the term "child sexual abuse material" or CSAM. It consists of visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct. See 18 U.S.C. §§ 2252 and 2256(2), (8).

b.    *Computer*: The term "computer" refers to "an electronic, magnetic, optical, electrochemical, or other high-speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly

3

related to or operating in conjunction with such device" and includes smartphones, mobile phones and devices, and tablets. See 18 U.S.C. § 1030(e)(1).

      c.    *Electronic mail* ("e-mail" or "email"): "E-mail" refers to a method of exchanging digital messages from an author to one or more recipients. Users may attach digital media to their e-mails. Modern e-mail operates across the Internet or other computer networks. E-mail systems are based on a store-and-forward model. Email servers accept, forward, deliver and store messages. E-mail accounts may be accessed by computers, to include smartphones and tablets.

      d.    *Minor*: The term "minor" means any person under the age of eighteen years. See 18 U.S.C. § 2256(1).

      e.    *Sexually Explicit Conduct*: The term "sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. *See* 18 U.S.C. § 2256(2).

      f.    *Visual Depictions*: "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

### RELEVANT STATUTES

7.    This investigation concerns alleged violations of certain activities relating to material involving the sexual exploitation of minors, including 18 U.S.C. § 2422(b) (attempted coercion and enticement):

a.      Title 18 U.S.C. § 2422 makes it a federal crime for any person to use the mail or any  facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

8.      Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

9.      *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

5

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f.      I know that when an individual uses an electronic device to produce child pornography, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

10.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41 (e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

11.     *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## DETAILS OF THE INVESTIGATION

12.     Beginning on May 11, 2026, I, along with other law enforcement officers participated in undercover online chats in an effort to identify individuals in the Albuquerque area with a sexual interest in children.  Acting in an undercover capacity, law enforcement officials posed as young minor children ("Jane Doe" / "John Doe") and engaged with users on a variety of messaging applications.

13.     On May 12, 2026, an online covert employee (OCE 1) was conducting chats in an undercover capacity on the messaging application MocoSpace[1]. On that date, OCE 1 began communicating as Jane Doe (hereafter DOE), a purported 12-year-old child, with an individual with the MocoSpace username "max1527" (hereafter LUJAN).

---

[1] MocoSpace is a mobile-focused social networking app and website, primarily used for meeting new people, chatting, and playing games. It features chat rooms, private messaging, live streaming, and photo sharing, serving a large community of users looking to connect locally or worldwide.

14.    The following chat exchanges occurred between DOE and LUJAN:[2]

DOE:    Ohh that's so cool tbh [to be honest] don't judge me ok but like I'm almost 13 f [female] Albuquerque but like if that's not cool like bye bc I don't want probs.

LUJAN:    No that's cool. I'm glad your're honest. Thank you 🙏 tbh I'll shar a secret

LUJAN:    *share

LUJAN:    I've been wanting a teen girl lately lol

\*\*\*\*\*\*\*\*\*\*\*\*

LUJAN:    I'd fwu [fuck with you] 😊

LUJAN:    I don't just wanna chat I wanna fuck lol

\*\*\*\*\*\*\*\*\*\*\*\*

LUJAN:    And tbh yeah I'm horny af [as fuck] lol

LUJAN:    Idk [I don't know] if you're down but we'd have to hang out and see you know

DOE:    Ig so I never did that so I'm curious tbh

LUJAN:    If the vibe is good then hell yeah I'd probably fuck you

15.    LUJAN also commented on the DOE's virginity: "You're a virgin. That's fine. Kinda hot tbh lol." And asked the DOE if she ever watched porn.  LUJAN stated his goal was to "have fun and not go to jail", indicating his knowledge that sexual contact with a 12 year old was

---

[2] The messages are included here in their original forms, including any typographical errors.

against the law. He also expressed that he did not want the DOE's mother to see any of their messages.

16.     As the conversation progressed, DOE and LUJAN began to communicate through the social media application SnapChat[3] and the messaging continued. LUJAN was communicating with DOE under SnapChat username, "Max_lujan27." At approximately 2:11pm (MST) on May 12, 2026, LUJAN messaged DOE, "Let's meet up." At approximately 2:28pm (MST), LUJAN said, "Try not to make it too obvious lol Maybe we meet at the park first or something" DOE replied "Ok" and LUJAN messaged back, "I'll have to ride my e-bike and as long as you promise you're not a cop and you can keep a secret. We can be friends I guess?" At approximately 2:33pm (MST), LUJAN sent DOE a photo of his face, allowing law enforcement to confirm his identity as Max Lorenzo Lujan with year of birth of 1990.

17.     The conversation continued with LUJAN planning to meet DOE at a park in Northeast Albuquerque, New Mexico, at approximately 7:30pm (MST). At approximately 8:35pm (MST), LUJAN was observed riding an electric bicycle near the park. Law enforcement officials detained LUJAN and transported him to the FBI Albuquerque Field Office. Following his detention, LUJAN was patted down for weapons, and no devices were located on his person. LUJAN was advised of his Constitutional Rights per *Miranda v. Arizona* by law enforcement at the FBI, to which he stated he understood and agreed to speak law enforcement.

---

[3] SnapChat is an American multimedia social media and instant messaging application and service developed by Snap Inc., originally Snapchat Inc. One of the principal features of the application is that pictures and messages, known as "Snaps", are typically only accessible for a brief period of time before their recipients can no longer access them.

18.    LUJAN was questioned about the online conversation with DOE. LUJAN stated he was speaking with a 13-year-old female named "JJ" on Mocospace. LUJAN stated the conversations took place on MocoSpace and that he uses the self-selected username of "max1527." LUJAN selected "15" and "27" based on professional baseball and football player's numbers. LUJAN informed law enforcement that he also uses Facebook under the username "maxlujan." LUJAN stated he has used Mocospace since high school and uses it casually or for sexting. LUJAN claimed "JJ" asked questions about practicing sex. LUJAN said he intended to teach "JJ" about sex but was unable to describe how he intended to accomplish this. LUJAN also told law enforcement he used Snapchat under the name "max_lujan27." LUJAN said his phone is an iPhone Air, which he uses through Wi-Fi because he does not have cellular service. LUJAN confirmed to law enforcement that he was communicating with "JJ" (the name used by DOE) using this phone and that his phone was with him when he was arrested. LUJAN declined to provide the passcode to his phone when law enforcement requested the information.

19.    LUJAN went on to state he believed he was being "catfished" and thought the FBI was watching him. He stated his goal was to meet "JJ" so he could find out why the FBI was watching him. LUJAN admitted to riding his e-bicycle approximately 45 minutes to meet with "JJ". LUJAN stated he wanted to hang out with "JJ" and possibly eat. Later in the interview, LUJAN said he was hoping "JJ's" parents were home so he could tell them about "JJ's" curiosity with practicing sex.

20.    When confronted with the messages he had sent, LUJAN admitted to sending the messages and that it looked bad and believed a jury of his peers would think his intention was to

10

have sex with an underage girl. LUJAN remained adamant he knew "JJ" was a law enforcement official and he had no intention of having a sexual encounter with an underage girl.

21.    Following the law enforcement apprehension of LUJAN, LUJAN was searched and a telephone was not located on his person. Based on LUJAN's statement regarding his phone, law enforcement went back to the site of the apprehension where they located the Device. The Device was located on the ground near where LUJAN was detained. To make sure it was the correct device, "JJ" called the LUJAN SnapChat account "max_lujan27" and the Device started to ring, confirming that the Device was LUJAN's device. Following seizure of the Device, law enforcement secured the Device as evidence, and it is currently securely maintained at 4200 Luecking Park Ave NE, Albuquerque, New Mexico 87107.

22.    Based on my training and experience, the purpose of the in-person meeting between LUJAN and DOE was for LUJAN to engage in sexual activity with DOE.  More specifically, LUJAN stated his intent to have sexual intercourse with DOE. Had the intended sexual acts occurred with a minor child, such conduct would be in violation of New Mexico state law, more specifically, N.M.S.A. § 30-9-1 (criminal sexual penetration); § 30-9-12 (criminal sexual contact of a minor). For the reasons stated in this warrant, I have probable cause to believe that the Device contains evidence of violations of 18 U.S.C. § 2422(b) (attempted coercion and enticement of a minor).

## TECHNICAL TERMS

23.    Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on

11

devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Based on my training and experience, the technical terms identified in this paragraph convey the following meanings:

a.      Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.      Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for

viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.      Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.      GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.       PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.       Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## BACKGROUND ON CHILD EXPLOITATION OFFENSES AND OFFENDER CHARACTERISTICS

24.    I have had both training and experience in the investigation of computer-related crimes and child exploitation offenses. Based on my training, experience, and knowledge, I know the following:

a.       In general, computers, including cellular phones, serve four functions in connection with child exploitation offenses: communication, production, distribution/receipt, and possession of child pornography.

14

b.      Individuals engaged in child exploitation offenses often use online resources to meet and communicate with minors. Such individuals may receive sexual gratification, stimulation, and satisfaction from virtual contact with children. Such contact often includes conversations that are sexual in nature, requesting sexually explicit conduct from the child, or sending the child sexually explicit images (depicting adults and/or minors) to lower the inhibitions of children. Such individuals often use online resources to meet and communicate with multiple minors at any given time. Often, such individuals make efforts to meet the minor in person for the purpose of engaging in sexual activity with that minor.

c.      Individuals that communicate with minors for sexual gratification, stimulation, or satisfaction, often possess child pornography, including material they obtain from the minors they communicate with, or through other means online.

d.      Individuals engaged in child exploitation offenses often use online resources to meet and communicate other like-minded individuals. The Internet affords such individuals several different venues for communication, as well as obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

e.      Individuals who use the Internet can communicate electronically by using a large variety of messaging applications. Messaging incorporates "real time" communication between users and can occur one-on-one or in a group setting. Internet Service Providers and web sites provide software and venue for such contact. Most messaging applications allow transmission of media files through the application and many offer video chat features as well.

15

f.    Once individuals engaged in child exploitation offenses obtain child pornography material directly from a child, or from the Internet, they often maintain or store this material because the material is valuable to them.  Offenders maintain or store child pornography material in a variety of ways. For instance, such individuals may store child pornography material on computers, including cellular phones, as well as on cloud accounts accessible through the device.

**INTERSTATE NEXUS**

25.    I believe that the element of "in or affecting interstate or foreign commerce" is satisfied for a violation of 18 U.S.C. § 2422(b) (attempted coercion and enticement of a minor) for the limited purpose of securing a search warrant. The Device was not manufactured in New Mexico and therefore must have traveled in interstate and foreign commerce before arriving in New Mexico.

**CONCLUSION**

26.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

27.    Assistant United States Attorney Sarah Mease reviewed and approved this search warrant application.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

16

Respectfully submitted,

Stacey Stout
Special Agent
Federal Bureau of Investigation

Subscribed electronically and sworn to me
telephonically this __21st__ day of May 2026:

JENNIFER ROZZONI
UNITED STATES MAGISTRATE JUDGE

17

## ATTACHMENT A

The property to be searched is an Apple iPhone, black in color with a clear case ("the Device"), which is currently in the custody of the Federal Bureau of Investigation at 4200 Luecking Park Avenue NE, Albuquerque, New Mexico 87107.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

### *Property to be seized*

1.     All evidence, fruits, and instrumentalities on the Device described in Attachment A that relate to violations of the following: 18 U.S.C. § 2422(b) (attempted coercion and enticement) involving Max Lujan occurring between May 1, 2026, and May 12, 2026 (date of seizure):

a.  All visual depictions (specifically images, videos, and any type of computer formatted file) which depict a minor (whether clothed, unclothed, or partially clothed) engaged in actual or simulated sexually explicit conduct, which includes the lewd or lascivious exhibition of genitals, and/or the minor posed or candid in a sexual manner (hereafter "child sexual abuse material" or "CSAM").

b.  All non-CSAM visual depictions of minors who may be the subject of the offenses described above, along with information about the minor, including names, addresses, nicknames, schools, or school groups, which may lead to the age or identity of the minor.

c.  All material related to the possession, receipt, distribution and/or production of CSAM.

d.  All evidence relating to the identity of the person(s) using or associated with the usernames: "max1527" and "max_lujan27."

e.  All communication with minor children that evidence an effort to groom the minor related to the offenses described above, meet the minor in person or online, or sexually exploit the minor in person or online.

f.  All material which may be sexually arousing to individuals who are sexually interested in minors, but which is not considered CSAM, such as material dealing with child development, sexual education, child pornography, sexual abuse of children, incest, child prostitution, missing children, investigative techniques for child exploitation investigations, sexual disorders, pedophilia, nudist communities involving minors, diaries, journals, and fantasy writings.

g.  All material concerning the identity of person(s) that are sexually attracted to children, members of child sex advocacy groups, and others involved in the sexual exploitation of minors.

2

h.  All documentation related to device passwords, encryption keys, and other access methods.

i.  Internet user data related to the offenses described above, specifically bookmarks, Internet history, temporary Internet files, .1nk files, and cache files, and other items showing.

j.  All evidence to identify and locate any "off-site" storage of electronic data, such as cloud-based accounts, including usernames, passwords, account information and access logs (this does not include the content of "off-site" data).

2.  Evidence of user attribution for the Device(s) which indicates ownership, including who accessed the Device(s), who used the Device(s), how the Device(s) were accessed, and/or how the Device(s) were utilized as related to any of the evidence listed above in paragraph 1 above. Evidence of user attribution includes items such as activity logs, other device activity, bookmarks, Internet history, temporary Internet files, .1nk files, and cache files.

Definitions / Authorizations

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts (hereafter "Government personnel"). Pursuant to this warrant, law enforcement

3

4

may deliver a complete copy of the seized or copied electronic data to the custody and control of

attorneys for the government and their support staff for their independent review.